IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

THE STATE OF WASHINGTON,

Respondent,

v.

PRESTON BROWN-LEE,

Appellant.

No. 85707-0-I

DIVISION ONE

UNPUBLISHED OPINION

DÍAZ, J. — A jury convicted Preston Brown-Lee of assault in the second degree. He now claims the trial court should not have included his juvenile convictions in his offender score per RCW 9.94A.525(1)(b), which prohibits courts from including most juvenile convictions in adult offender scores. He also argues the Sixth Amendment and Washington constitution require that a jury, not the court, find he was on community custody at the time of his offense. We disagree with both contentions and affirm.

I.     BACKGROUND

In May 2022, the State charged Brown-Lee with assault in the second degree after an altercation at a convenience store in October 2021. During trial, Brown-Lee stipulated that the Department of Corrections (DOC) had released him from prison on September 1, 2021. At the conclusion of the trial in May 2023, a jury found Brown-Lee guilty as charged. The jury further found a rapid recidivism

aggravator, as Brown-Lee committed the offense shortly after his release from incarceration.

At his sentencing in August 2023, Brown-Lee argued his two juvenile convictions should not be included in his offender score under RCW 9.94A.525(1)(b), which became effective July 23, 2023. LAWS OF 2023, ch. 415, § 1-2. The court disagreed, finding "the statute is not retroactive" to when Brown-Lee committed his offense in 2021. If the juvenile convictions were included, the parties agreed Brown-Lee's offender score would be nine. Specifically, Brown-Lee's offender score included four points for his adult history, four points for his juvenile history, and one point for being on community custody at the time of his offense.

Brown-Lee timely appeals.

## II.    ANALYSIS

### A.    Whether RCW 9.94A.525(1)(b) Applies to this Matter

RCW 9.94A.525 governs a court's calculation of an offender score. In 2023, the legislature added subsection (1)(b), which states that, "[f]or the purposes of this section, adjudications of guilt pursuant to Title 13 RCW which are not murder in the first or second degree or class A felony sex offenses may not be included in the offender score." LAWS OF 2023, ch. 415, § 2. Title 13 RCW governs "Juvenile Courts and Juvenile Offenders." Thus, except for the three exceptions listed above, RCW 9.94A.525(1)(b) prohibits the inclusion of juvenile convictions in a defendant's offender score, effective July 23, 2023.

Brown-Lee argues that the plain language of RCW 9.94A.525(1) evinces an

intent it apply to all sentencings occurring on or after July 23, 2023, and that the trial court should have so applied the law at his August 2023 sentencing. We disagree.

Sentences imposed under the "timing" statute of the Sentencing Reform Act, ch. 9.94A RCW, are generally determined "in accordance with the law in effect at the time of the offense." State v. Jenks, 197 Wn.2d 708, 714, 487 P.3d 482 (2021) (citing RCW 9.94A.345). And "we will apply a statutory amendment *retroactively* 'when it is (1) intended by the Legislature to apply retroactively, (2) curative in that it clarifies or technically corrects ambiguous statutory language, or (3) remedial in nature.'" State v. Mann, 146 Wn. App. 349, 360, 189 P.3d 843 (2008) (quoting Barstad v. Stewart Title Guar. Co., 145 Wn.2d 528, 536-37, 39 P.3d 984 (2002)). "Washington courts *disfavor* retroactive application of a statute, absent legislative direction to the contrary." Id. (emphasis added); State v. Brake, 15 Wn. App. 2d 740, 744, 476 P.3d 1094 (2020) ("statutes are presumed to be prospective unless there is a *clear* indication that the legislature intended a retroactive effect.") (emphasis added).

This determination presents a question of statutory interpretation which we review de novo. State v. Ervin, 169 Wn.2d 815, 820, 239 P.3d 354 (2010). When we interpret a statute, we first "look to the text of the statutory provision in question, as well as 'the context of the statute in which that provision is found, related provisions, and the statutory scheme as a whole.'" Id. (quoting Ravenscroft v. Wash. Water Power Co., 136 Wn.2d 911, 920–21, 969 P.2d 75 (1998)). "If the meaning of a statute is plain on its face, then the court must give effect to that

meaning." State v. Smith, 158 Wn. App. 501, 505, 246 P.3d 812 (2010).

Brown-Lee makes three overarching arguments, all of which are unavailing.

First, Brown-Lee relies on State v. J.P., 149 Wn.2d 444, 450, 69 P.3d 318 (2003), State v. Shilling, 77 Wn. App. 166, 173-174, 889 P.2d 948 (1995), and State v. Collicott, 118 Wn.2d 649, 665-67, 827 P.2d 263 (1992), for the proposition that "the date of sentencing is the operative date for offender score calculations" under various provisions of RCW 9.94A.525(1)(a). These decisions are inapposite, as they each pre-date RCW 9.94A.525(1)(b) and none address how exempted convictions are considered under that separate section.

More to the point, this court has recently held at least twice that the legislature did not evince an intent for RCW 9.94A.525(1)(b) to apply retroactively. See State v. Troutman, 30 Wn. App. 2d 592, 594, 546 P.3d 458 (2024), review denied, 3 Wn.3d 1016 (holding that "the 2023 amendment conveys no legislative intent that it applies retroactively, under RCW 9.94A.345[1] and [under] the savings clause, RCW 10.01.040,[2] the law in effect at the time of the offense applies to

---

[1] Again, RCW 9.94A.345, the "timing" statute, requires that, "[e]xcept as otherwise provided in this chapter, any sentence imposed under this chapter shall be determined *in accordance with the law in effect when the current offense was committed*." (Emphasis added.)

[2] RCW 10.01.040, the "saving clause," requires that, "[w]henever any criminal or penal statute shall be *amended* or repealed, *all offenses committed* or penalties or forfeitures incurred while it was in force *shall be punished* or enforced *as if it were in force*, notwithstanding such amendment or repeal, *unless a contrary intention is expressly declared* in the amendatory or repealing act, and every such amendatory or repealing statute shall be so construed as to save all criminal and penal proceedings, and proceedings to recover forfeitures, pending at the time of its enactment, *unless a contrary intention is expressly declared therein*." (Emphasis added.) In seeking to explain away the applicability of the savings clause, Brown-Lee focuses only on when the penalty was "incurred' and not on when the offense was committed, here October 2021, or found to be committed, here May 2023, as

Troutman's sentence, so the amendment does not alter the calculation of Troutman's offender score"); State v. Gibson, No. 58962-1-II, slip op. at 4 (Wash. Ct. App. Feb. 19, 2025), https://www.courts.wa.gov/opinions/pdf/D2%2058962-1-II%20Published%20Opinion.pdf ("Nothing in the bill mentions retroactive application or indicates that it should apply to cases pending on the effective date").[3]

Second, Brown-Lee points to the legislature's statement of intent, including that RCW 9.94A.525(1)(b) seeks to "[f]acilitate the provision of due process by granting the procedural protections of a criminal proceeding in any adjudication which may be used to determine the severity of a criminal sentence" and also references the "grave disproportionality within the juvenile legal system" and "scientific research on brain development." LAWS OF 2023, ch. 415, § 1. From this, Brown-Lee argues that "where the legislation contained 'additional language that fairly conveys disapproval or concern about continued prosecution,' the new law applies to pending cases, despite the saving clause statute." (Quoting State v. Rose, 191 Wn. App. 858, 871, 365 P.3d 756 (2015)). This argument fails both because it disregards this court's admonition in Rose that it involved a "rare case," 191 Wn. App. at 871, and because this court in Troutman explicitly considered the

---

the savings clause requires.

[3] This court in State v. Gibson also rejected Brown-Lee's alternative argument that RCW 9.94A.525(1)(b) applied because his direct appeal was "pending" at the time the law became effective. No. 58962-1-II, slip op. at 3-4 (Wash. Ct. App. Feb. 19, 2025), https://www.courts.wa.gov/opinions/pdf/D2%2058962-1-II%20Published%20Opinion.pdf; see also State v. Tester, 30 Wn. App. 2d 650, 656, 546 P.3d 94, review denied, 556 P.3d 1094 (2024) (holding "[t]he legislature did not express an intent that the 2023 amendment would apply to pending prosecutions for offenses committed before its effective date.").

same statements of intent and nonetheless held RCW 9.94A.525(1)(b) "does not evince a legislative intent for [the statute] to apply retroactively." 30 Wn. App. 2d at 599-600.

Third, Brown-Lee argues we should apply RCW 9.94A.525(1)(b) retroactively because it is remedial in nature. "'A statute is remedial when it relates to practice, procedure, or remedies and does not affect a substantive or vested right.'" State v. Pillatos, 159 Wn.2d 459, 473, 150 P.3d 1130 (2007) (quoting Miebach v. Colasurdo, 102 Wn.2d 170, 181, 685 P.2d 1074 (1984)). However, this court again in Troutman already "rejected a similar argument" because, "'[a]bsent language indicating a contrary intent, an amendment to a penal statute – even a patently remedial one – must apply prospectively under RCW 10.01.040,'" i.e., under the savings clause. 30 Wn. App. 2d at 598 n.6 (quoting State v. Jenks, 12 Wn. App. 2d 588, 600, 459 P.3d 389 (2020)).

As the lack of intent for retroactivity is clear from the plain text of RCW 9.94A.525(1)(b), we need not consider secondary modes of statutory interpretation. See, e.g., Ervin, 169 Wn.2d at 820.

We hold the plain text of RCW 9.94A.525(1)(b) does not contain an "express" or "clear" statement of intent for retroactivity, or any other basis for retroactivity. RCW 10.01.040; Brake, 15 Wn. App. 2d at 744. We thus also hold RCW 9.94A.525(1)(b) was inapplicable to Brown-Lee's sentencing as it was effective after his offense occurred in October 2021. Jenks, 197 Wn.2d at 714; LAWS OF 2023, ch. 415, § 1-2.

B.     Community Custody Finding

6

For the first time on appeal, Brown-Lee next argues the court violated his right to a jury trial as the judge, rather than the jury, found that Brown-Lee committed the current offense while he was on community custody for a prior offense.[4]  We disagree.

It is true that the sentencing court, without an attendant jury finding, added one point to Brown-Lee's offender score "for offense(s) committed while under community placement," as permitted by statute.  RCW 9.94A.525(19) ("If the present conviction is for an offense committed while the offender was under community custody, add one point").

And it is true that "[b]oth the Sixth Amendment and article I, sections 21 and 22 of the Washington Constitution guarantee a defendant's right to a jury trial."[5] State v. McKnight, 25 Wn. App. 2d 142, 147, 522 P.3d 1013 (2023).  This right "entitle[s] a criminal defendant to a jury determination that he is guilty of every element of the crime with which he is charged, beyond a reasonable doubt." Apprendi v. New Jersey, 530 U.S. 466, 466-67, 120 S. Ct. 2348, 147 L. Ed. 2d 435

---

[4] At sentencing, Brown-Lee did not object to the court adding a community custody point to his offender score.  "[T]o raise an error for the first time on appeal, the error must be "'manifest'" and "truly of constitutional dimension," which can include claims relating to the right to a jury trial.  State v. Kirkman, 159 Wn.2d 918, 926-27, 155 P.3d 125 (2007) (quoting RAP 2.5(a)(3)).  As we did in State v. Frieday, we utilize our discretion to consider Brown-Lee's claim as "the potential relevance of new United States Supreme Court jurisprudence is sufficiently important enough for us to exercise our discretion to reach his arguments" challenging his sentencing and offender score.  No. 58467-1-II, slip op. at 23-24, 26 (Wash. Ct. App. Mar. 11, 2025), https://www.courts.wa.gov/opinions/pdf/D2%2058467-1-II%20Published%20Opinion.pdf (citing RAP 1.2(c)).

[5] Brown Lee makes clear in his reply brief that, "because the federal constitution guarantees this jury right, the state constitution guarantees it to at least the same extent," there is no need for an analysis under State v. Gunwall, 106 Wn.2d 54, 720 P.2d 808 (1986).

(2000). Further, as a logical corollary, "a unanimous jury ordinarily must find beyond a reasonable doubt any fact that increases a defendant's exposure to punishment." Erlinger v. United States, 602 U.S. 821, 836, 144 S. Ct. 1840, 219 L. Ed. 2d 451 (2024).

But, the United States Supreme Court also has held that it could not "find . . . significant support for the proposition that the Constitution *forbids* a legislature to *authorize* a longer sentence for recidivism." Almendarez-Torrez v. United States, 523 U.S. 224, 246, 118 S. Ct. 1219, 140 L. Ed. 2d 350 (1998).[6] Our Supreme Court characterized this holding as a narrow "prior conviction exception" to the requirement that a jury find each element of a crime beyond a reasonable doubt. State v. Jones, 159 Wn.2d 231, 236, 149 P.3d 636 (2006); State v. Brinkley, 192 Wn. App. 456, 464, 369 P.3d 157 (2016) (same).

In other words, our Supreme Court held that "*a court*, rather than a jury, may . . . make, constitutionally, the former RCW 9.94A.525(17)[7] community placement determination."[8] Jones, 159 Wn.2d at 247. And, the court held that "the 'prior

---

[6] As here, "[b]oth the certainty that procedural safeguards attached to any 'fact' of prior conviction, and the reality that Almendarez-Torres did not challenge the accuracy of the 'fact' in his case, mitigated the due process and Sixth Amendment concerns otherwise implicated in allowing a judge to determine a 'fact' increasing punishment beyond the maximum of the statutory range." Apprendi, 530 U.S. at 488.

[7] As noted in Jones, former RCW 9.94A.525(17) refers to the same provision as the current RCW 9.94A.525(19). 159 Wn.2d at 233 n.1; LAWS OF 2006, ch. 128, § 6; LAWS OF 2007, ch. 116, § 1.

[8] Specifically, "the community placement sentence determination is a determination about a defendant's status as recidivist, does not require the independent judgment of a fact finder about facts related to a defendant's commission of the current offense, and can be readily determined by a limited examination of the record flowing from the prior conviction." Jones, 159 Wn.2d at 247.

conviction' exception includes not only the fact of the conviction itself but also 'facts intimately related to the prior conviction.'" Brinkley, 192 Wn. App. at 464 (quoting Jones, 159 Wn.2d at 241).

It is true that the United States Supreme Court has also stated, while "it is arguable that Almendarez-Torres was incorrectly decided, and that a logical application of our reasoning today should apply if the recidivist issue were contested, [the petitioner] does not contest the decision's validity and *we need not revisit it* for the purposes of our decision today." Apprendi, 530 U.S. at 489-90 (emphasis added). In turn, our Supreme Court observed that while Apprendi "suggested that Almendarez-Torres might have been incorrectly decided" it "explicitly declined to reach the issue" and "confined its decision to factors *other than recidivism*." State v. Wheeler, 145 Wn.2d 116, 123, 34 P.3d 799 (2001) (emphasis added). Thus, Almendarez-Torres, while questioned, is still binding law.

In response, Brown-Lee cites Erlinger, 602 U.S. at 824, as overriding the above precedent. However, this court twice recently has held that Erlinger "is limited to resolving [the federal Armed Career Criminal Act (ACCA)]'s occasions inquiry and does not overrule our state's well-established precedent in Wheeler." State v. Anderson, 31 Wn. App. 2d 668, 552 P.3d 803 (2024); State v. Frieday, No. 58467-1-II, slip op. at 26 (Wash. Ct. App. Mar. 11, 2025), https://www.courts.wa.gov/opinions/pdf/D2%2058467-1-II%20Published%20Opinion.pdf ("We agree with Anderson that Erlinger should be limited to the ACCA and does not overrule existing Washington precedent."). In

9

other words, "[a]s noted in . . . Erlinger itself, Erlinger did 'no more' than impose a requirement that a jury resolve the ACCA's occasions inquiry." Frieday, slip op. at 26 (quoting Erlinger, 602 U.S. at 835).

In sum, neither Almendarez-Torres or our Supreme Court's related holdings in Jones and Wheeler have been overturned.  Thus, we must follow this binding precedent upholding a trial court's ability to find the defendant was on community custody at the time of an offense without an attendant jury finding.  As such, we hold the sentencing court here did not violate Brown-Lee's right to a jury trial.[9]

### III.    CONCLUSION

We affirm.

_____
Díaz, J.

WE CONCUR:

_____
Chung, J.

_____, ACJ

---

[9] While not dispositive in our decision here, a brief examination of the record supports the court's finding that Brown-Lee was on community custody at the time of his offense, and thus relieves any due process concerns, as in Apprendi, 530 U.S. at 488.  On October 11, 2019, the court sentenced Brown-Lee for a separate robbery in the second degree conviction to 29 months of incarceration and 18 months of community custody.  As Brown-Lee stipulated at trial, the DOC released him on September 1, 2021.  A jury then convicted Brown-Lee for his actions on October 22, 2021, and further found a rapid recidivism aggravator.  RCW 9.94A.729(3)(e) states that outside certain situations, "no other case shall the aggregate earned release time exceed one-third of the total sentence."  Thus, even if Brown-Lee received the maximum earned release time, he would have been on community custody in October 2021.